ICI CONSTRUCTION, INC., Appellant,

v.

**ORANGEFIELD INDEPENDENT SCHOOL DISTRICT,** Appellee.

No. 09–10–00369–CV.

Court of Appeals of Texas, Beaumont.

Submitted Feb. 4, 2011.

Decided March 24, 2011.

Larry C. Hunter, Hunter Burch, L.L.P., Vidor, Allison J. Snyder, Daniel V. Flatten, Timothy C. Ross, Porter & Hedges, L.L.P., Houston, for appellant.

Richard A. Morris, Adam D. Courtin, Rogers, Morris & Grover, L.L.P., Houston, for appellee.

Before McKEITHEN, C.J., KREGER and HORTON, JJ.

## OPINION

HOLLIS HORTON, Justice.

We are asked to decide whether the Orangefield Independent School District ("OISD") is immune from ICI Construction, Inc.'s ("ICI") suit seeking to recover the remaining balance it claims to be owed for its work repairing damages caused by Hurricane Rita. We conclude the trial court correctly determined that there was no written contract stating the essential terms of the parties' agreement; therefore, we hold the trial court did not err when it granted OISD's plea to the jurisdiction.

### Background

In September 2005, Hurricane Rita damaged OISD's facilities. That same

month, the OISD Board of Trustees held a special meeting at which the Board was informed of the damages that had been caused by the hurricane. Jeff Tipton, an employee of ICI, and Joe Roye, an employee of OISD, "explained [to the Board] the procedures that were in place to correct the damage and allow [them] to get back into school as soon as possible." Having been informed about the damages caused by the hurricane, the Board of Trustees, in a unanimous vote, determined that "[t]he delay posed by the methods provided for in Education Code § 44.031[1] would prevent or substantially impair the conduct of classes or other essential school activities in a timely manner." It appears the purpose of the finding was to allow the Board "to get repairs started[.]"

■ Following the meeting, ICI performed hurricane-related repairs and received payments from OISD in excess of one million dollars for its work. Alleging that OISD had failed to fully pay for the repairs, ICI filed suit, claiming that OISD owed it an additional $278,096. In response to ICI's suit, OISD filed a plea to the jurisdiction,[2] asserting that no written contract existed with respect to the work that is the subject of the lawsuit. ICI responded to OISD's plea, arguing that various documents could be read together to demonstrate the essential terms of the parties' contract. Subsequently, the trial court granted OISD's plea, dismissing ICI's claims with prejudice.

While it is clear that OISD and ICI reached an agreement by which ICI was hired to provide hurricane-related repairs, the parties dispute whether their agreement was reduced to a writing containing the agreement's essential terms. ICI contends that multiple documents, when read together, sufficiently set forth the essential terms of the parties' agreement. OISD disagrees, contending that without the benefit of a single document, a court cannot properly determine whether the parties reached an agreement on the contract's essential terms. Alternatively, OISD contends that the putative contract, to be based on the documents on which ICI relies, fails to describe the essential terms of the parties' agreement.

### Standard of Review

■ "Whether a court has subject matter jurisdiction is a question of law." *Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 226 (Tex.2004). We review the trial court's decision that it did not have subject matter jurisdiction over ICI's claims under a *de novo* standard. *See id.* at 228. When the defendant's plea to the jurisdiction challenges the existence of jurisdictional facts, we consider the relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised. *Id.* at 227. We take as true the evidence that favors the nonmovant and indulge every reasonable inference and resolve any doubts arising from such evidence in the nonmovant's favor. *Id.* at

1. *See* Tex. Educ.Code Ann. § 44.031(h) (West Supp.2010) (providing that Board of Trustees may contract in cases of unforeseen catastrophes for the replacement or repair of school facilities by methods other than the methods authorized by section 44.031(a), such as competitive bidding).

2. The purpose of a plea to the jurisdiction "is to defeat a cause of action without regard to whether the claims asserted have merit."

*Bland Indep. Sch. Dist. v. Blue,* 34 S.W.3d 547, 554 (Tex.2000). A school district, by definition, is a "[l]ocal governmental entity" over which a court can exercise jurisdiction with respect to cases alleging breaches of properly executed written contracts containing the essential terms of the parties' agreement for either goods or services. *See* Tex. Loc. Gov't Code Ann. § 271.151(2), (3)(B) (West 2005).

228. If the relevant evidence is not disputed, or a fact question is not raised relative to the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law. *Id.* On the other hand, when the evidence creates a fact question regarding the trial court's exercise of jurisdiction over the plaintiff's claim, the trial court cannot grant the plea, and the issue is left to be resolved by the factfinder. *Id.* at 227–28. In conducting a *de novo* review, courts "may not weigh the claims' merits but must consider only the plaintiffs' pleadings and the evidence pertinent to the jurisdictional inquiry." *County of Cameron v. Brown,* 80 S.W.3d 549, 555 (Tex.2002).

## Analysis

 Generally, the doctrine of governmental immunity protects political subdivisions, such as school districts, from both suit and from liability to paying a judgment. *See Harris County v. Sykes,* 136 S.W.3d 635, 638 (Tex.2004); *Wichita Falls State Hosp. v. Taylor,* 106 S.W.3d 692, 694 n. 3 (Tex.2003). Immunity from suit [3] deprives a trial court of subject matter jurisdiction unless the government has consented to being sued. *Miranda,* 133 S.W.3d at 224; *Tex. Dep't of Transp. v. Jones,* 8 S.W.3d 636, 638 (Tex.1999). Consent is generally established by a statement in the petition referencing a statute which demonstrates the Legislature has waived the political subdivision's right to governmental immunity for the claim in question, or by referencing a bill through which the Legislature expressly granted permission for the named plaintiff to sue on its claim. *See Jones,* 8 S.W.3d at 638.

ICI's original petition, its live pleading, alleges that OISD waived its governmental immunity by entering into a written contract with ICI to perform hurricane-related repairs. With respect to its claim of waiver, ICI's petition references section 271.152 of the Texas Local Government Code. OISD's plea challenging the trial court's exercise of subject matter jurisdiction over ICI's lawsuit asserts that it "never executed a written contract for ICI to perform the work that is the subject of this lawsuit." Thus, OISD challenged the existence of a jurisdictional fact. In response to OISD's plea, ICI filed sixteen documents as exhibits to its reply, and argued that "the purchase orders, pay applications, checks and admissions of OISD's Superintendent, when read together, constitute the 'essential terms' necessary for the formation of a written contract between ICI and OISD for the hurricane repair work."

The statutory waiver relied on by ICI, section 271.152 of the Texas Local Government Code, waives the immunity of local government entities that are authorized to make contracts "subject to this subchapter." Tex. Loc. Gov't Code Ann. § 271.152 (West 2005). Section 271.151

---

**3.** As the Texas Supreme Court has explained:

Immunity from liability and immunity from suit are two distinct principles. Immunity from liability protects the state from judgment even if the Legislature has expressly consented to the suit. Like other affirmative defenses to liability, it must be pleaded or else it is waived. Immunity from liability does not affect a court's jurisdiction to hear a case.

In contrast, immunity from suit bars an action against the state unless the state expressly consents to the suit. The party suing the governmental entity must establish the state's consent, which may be alleged either by reference to a statute or to express legislative permission. Since as early as 1847, the law in Texas has been that absent the state's consent to suit, a trial court lacks subject matter jurisdiction.

*Tex. Dep't of Transp. v. Jones,* 8 S.W.3d 636, 638 (Tex.1999) (citations omitted).

defines the phrase "[c]ontract subject to this subchapter" as "a written contract stating the essential terms of the agreement for providing goods or services to the local governmental entity that is properly executed on behalf of the local governmental entity." *Id.* § 271.151(2) (West 2005).

 ICI relies on multiple documents to evidence the parties' written agreement. Generally, a court may determine, as a matter of law, whether "multiple documents comprise a written contract." *Fort Worth Indep. Sch. Dist. v. City of Fort Worth,* 22 S.W.3d 831, 840 (Tex.2000). But even were we to conclude that the multiple documents relied upon by ICI constitute a written contract, section 271.152, the statute on which ICI relies to waive OISD's immunity from suit, contains an additional requirement that the parties' written contract contain the essential terms of the parties' agreement. *See* Tex. Loc. Gov't Code Ann. §§ 271.151–.152.

In our opinion, ICI's putative contract documents do not contain several of the terms that are essential to a court's ability to enforce OISD's obligation to pay for hurricane-related repairs. First, the putative contract documents fail to reveal the basis of OISD's agreement to pay for hurricane-related repairs. While the documents reveal that OISD received itemized invoices, the itemized invoices fail to show that OISD agreed to pay ICI based on the invoiced amounts; for example, none of the putative contract documents demonstrate OISD's agreement to pay for repairs on a time and material basis, a cost-plus basis, or some other basis for valuing ICI's work. In our opinion, the basis upon which OISD agreed to compensate ICI for repair services was an essential term of the parties' agreement and is a term necessary to define the extent of OISD's obligation to pay for ICI's repairs. *See Kirby Lake Dev., Ltd. v. Clear Lake City Water Auth.,* 320 S.W.3d 829, 838 (Tex.2010).

Additionally, ICI's putative contract documents fail to fully define the properties that OISD agreed to have repaired.[4] While ICI's itemized estimates reflect cost estimates on various properties, the fact that certain properties received estimated repair costs is not evidence that OISD agreed to have ICI repair the properties identified in ICI's estimates. While OISD paid a significant amount for hurricane-related repairs, the checks tendered in payment are not associated with specific property repairs; as a result, the putative contract documents, even when read together, fail to reveal the specific individual properties that OISD agreed to repair. A determination of which properties OISD agreed to repair requires evidence that is not contained in the documents before us.

Finally, even if we could associate specific invoices with OISD's partial payments, the putative contract documents fail to provide any evidence that OISD agreed to pay the full amount of each itemized and invoiced amount for each of the pieces of property on which ICI performed repairs, or that OISD agreed to pay the total amount invoiced on all of the repaired properties collectively. Because the putative contract documents fail to make the obligations of the parties "sufficiently defi-

---

4. The putative contract documents reflect that OISD agreed to repairs of the dugout at the baseball field, the track house, and the track storage shed, but with the exception of these specific properties, the documents do not show OISD's agreement to repair the many other properties identified in ICI's invoices which ICI submitted to OISD requesting payment. With respect to the dugout, track house, and track storage shed, the putative contract documents do not reflect whether OISD agreed to pay for repairs to these three properties on a time and material, a cost-plus, or some other basis.

nite to enable a court to understand the parties' obligations[,]" we conclude the trial court did not err in concluding that the jurisdictional facts failed to demonstrate an issue concerning the existence of a written contract that contained the essential terms of the parties' agreement. *Fort Worth Indep. Sch. Dist.*, 22 S.W.3d at 846. In the absence of evidence demonstrating the existence of such a contract, we hold the trial court acted properly in granting OISD's plea to the jurisdiction.

■■ ICI did not request the trial court to consider additional documents to establish its claim that OISD had waived its immunity from suit after the trial court informed the parties of its intent to dismiss, and on appeal, ICI has not asked that we remand the case to allow the trial court to consider additional written documents relevant to the issue of whether ICI's putative contract documents state the agreement's essential terms. A "dismissal with prejudice is appropriate when a trial court lacks subject matter jurisdiction because of the sovereign immunity bar." *Sykes*, 136 S.W.3d at 639. We conclude that ICI has had a reasonable opportunity to identify all of the documents relevant to the question of the existence of a written contract containing the essential terms of the parties' agreement; consequently, a dismissal with prejudice is appropriate.

### Prompt Pay Act and Attorney's Fee Claims

■■ In its petition, ICI also brought a claim alleging that OISD had violated the Prompt Pay Act and a claim for attorney's fees. The trial court's order expressly provides that "all claims asserted by [ICI] against [OISD] are dismissed in their entirety with prejudice to their refilling."

On appeal, ICI failed to challenge the trial court's dismissal of the Prompt Pay Act and attorney's fee claim. However, ICI's reply brief, filed in response to OISD's argument that ICI had waived any complaint arising from the trial court's dismissal of these two claims, argues the trial court "never reached OISD's argument regarding ICI's Prompt Payment Act claim."

In evaluating whether the trial court's judgment disposed of these additional two claims, we note that OISD, in its plea to the jurisdiction, argued that OISD retained immunity from ICI's Prompt Payment Act and attorney's fee claims. The trial court's order dismissed "all claims[,]" and further states that "[t]his is a final judgment." We conclude the trial court's order was final with respect to the trial court's dismissal of ICI's breach of contract, prompt pay, and attorney's fee claims. *See Lehmann v. Har–Con Corp.*, 39 S.W.3d 191, 205 (Tex.2001) ("Language that the plaintiff take nothing by his claims in the case … shows finality if there are no other claims by other parties[.]").

In its principal brief, ICI failed to challenge the trial court's order dismissing ICI's Prompt Pay Act and attorney's fee claims. ICI's reply brief also fails to contain an argument to explain how the trial court erred in concluding it had no jurisdiction over the Prompt Pay Act and attorney's fee claims. Under the circumstances, we conclude the trial court finally disposed of those claims and its disposition was not challenged on appeal. *See Jacobs v. Satterwhite*, 65 S.W.3d 653, 655–56 (Tex. 2001) (failure to raise issue on appeal waives error); Tex.R.App. P. 38.1(f), (i) (requiring the appellant's brief to concisely state all issues presented for review and to provide citations to authorities and to the record with respect to the issues the brief seeks to raise).

### Conclusion

We affirm the trial court's order dismissing all of ICI's claims.

AFFIRMED.