**Opinion issued March 10, 2015**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-14-00468-CV

————————————

## WESTERN OILFIELDS SUPPLY COMPANY

## D/B/A RAIN FOR RENT, Appellant

## V.

## CITY OF ANAHUAC, Appellee

On Appeal from the 344th District Court
Chambers County, Texas
Trial Court Case No. CV28211

## MEMORANDUM OPINION

In this appeal from the trial court's granting of a plea to the jurisdiction based on governmental immunity, we determine whether the City of Anahuac waived its immunity from a suit for breach of contract, brought by Western

Oilfields Supply Company d/b/a Rain for Rent. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 51.014(a)(8), 101.001(3) (West 2015); TEX. LOC. GOV'T CODE ANN. § 271.151 (West Supp. 2014). Rain for Rent contends that it pleaded facts that affirmatively demonstrate subject-matter jurisdiction or, alternatively, disputed facts exist on the jurisdictional issue, and thus, the trial court erred in granting the plea. Rain for Rent also complains that the trial court failed to allow Rain for Rent an opportunity to amend its pleadings before granting the plea to the jurisdiction. We conclude that the trial court properly determined that Rain for Rent's jurisdictional facts do not overcome Anahuac's governmental immunity and therefore affirm.

## Background

In September 2008, Hurricane Ike damaged Anahuac's municipal water treatment plant, and the plant became inoperable by October 2010. While the municipal plant was undergoing repairs, Anahuac initially contracted with Trinity Bay Conservation District to provide potable water to its citizens. But when TBCD raised its rates, Anahuac investigated alternative sources for its water needs. The City learned that Rain for Rent could provide pumping equipment for a water filtration system on a temporary basis until the municipal plant became operational.

2

On August 12, 2011, Anahuac's City Secretary signed a Credit Application and Master Rental and Sales Agreement [rental agreement] with Rain for Rent. Among other terms, the rental agreement:

- specifies the payment schedule and Rain for Rent's right to charge interest on an unpaid invoice more than 30 days past due;
- prohibits the presence or use of hazardous waste in or around the equipment;
- provides for the delivery, maintenance, repair, and return of the equipment; and
- holds the renter liable for any damages or loss.

The application contained terms and conditions of any rental, but it did not contain a price term. Six days later, Rain for Rent presented a proposal to Anahuac City Council at a specially called meeting. The minutes of that August 18 meeting provide as follows:

Mayor Hawthorne asked the gentlemen from Rain for Rent to introduce themselves and show their presentation.

Rain for Rent introduced themselves as Senior Sales Representative Clint LeBlanc, Sales Representative Jared Rose, and Branch Manager Ben Miller.

The representatives gave their presentation and then asked for questions. . . .

Jared Rose with Rain for Rent stated that all the equipment they have discussed is on a rental agreement.

Councilwoman Sanders asked if this would be a temporary fix.

Jared Rose answered with they had talked about two years but that their equipment last[s] up to 10-15 years. Jared explained that the cost includes installation.

3

Mayor Hawthorne asked City Administrator Lance Nauman about the price he had provided.

City Administrator Lance Nauman answered that the price would be $3.48 per thousand for the start-up cost which would be the first month, then the price would be $2.48 per thousand thereafter. . . .

Mayor Hawthorne asked if we approved to go with Rain for Rent tonight how long would it take to have things up and running. Rain for Rent representative said they would start moving equipment in as soon as we get the okay and then once we got everything in order it would take about five to six days to install and for us to be up and running. . . .

Mayor Hawthorne asked if anyone would like to make a motion. . . . Councilwoman Sanders made a motion to go with Rain for Rent while we still communicate with TBCD to try and come to an agreement with them but going with Rain for Rent stops the $5.80 charge we are being charged. The motion was seconded and passed with three yes and one nay.

On September 8, 2011, Rain for Rent prepared a document entitled "Rental/Sale Estimate," which City Administrator Nauman signed on September 13. That document provides:

The Terms and Conditions of the Rain for Rent Rental and Acute Hazardous Waste Agreement, Credit Application, Invoice, and this estimate contain the complete and final agreement between Rain for Rent and Customer and no other agreement in any way modifying or adding to any of the said terms and conditions will be binding on Rain for Rent unless made in writing and signed by a Rain for Rent Corporate Officer.

The rental/sale estimate itemizes the equipment to be purchased as well as the monthly rental cost of the equipment to be rented. The itemization includes a rental subtotal, a sale subtotal, and prices for delivery hauling, labor for

installation, an environmental recovery fee, and a fuel surcharge. The next page specifies the individual components included in the rental subtotal and the sale subtotal, respectively. The remainder outlines additional terms and conditions, specifies the billing cycle and the customer's responsibility for the equipment, and disclaims any warranties.

On the same date, Nauman signed a purchase order for $105,573.49, the total amount shown in the rental/sale estimate.

Rain for Rent installed the water filtration system and began providing water to Anahuac. The City made several payments to Rain for Rent, but ultimately became past due on its account, giving rise to Rain for Rent's breach of contract claim.

## Governmental Immunity

### I. Standard of Review

A plea to the jurisdiction is a dilatory plea that seeks dismissal of a case for lack of subject matter jurisdiction. *Harris Cnty. v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004); *City of Houston v. S. Elec. Servs., Inc.*, 273 S.W.3d 739, 744 (Tex. App.—Houston [1st Dist.] 2008, pet. denied). The question of whether a court has subject matter jurisdiction is a matter of law; accordingly, we review de novo the trial court's ruling on a plea to the jurisdiction. *Hoff v. Nueces Cnty.*, 153 S.W.3d 45, 48 (Tex. 2004); *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217,

226 (Tex. 2004). The plaintiff bears the burden of alleging facts affirmatively showing that the trial court has subject-matter jurisdiction. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993). If a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider pertinent evidence in the record when necessary to resolve the jurisdictional issues raised. *Miranda*, 133 S.W.3d at 227. We take the allegations in the petition as true and construe them in favor of the pleader. *See id.* at 228. If the evidence raises a fact issue concerning the existence of jurisdiction, then the plea must be denied. *Id.* at 227–28. If, on the other hand, the evidence is undisputed or fails to raise a fact issue, then the trial court rules on the plea to the jurisdiction as a matter of law. *Id.* at 228.

If a plaintiff fails to plead sufficient facts affirmatively demonstrating the trial court's jurisdiction, but the pleadings do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and the plaintiff should be afforded the opportunity to amend. *Id.* at 226–27; *Cnty. of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002); *Tara Partners, Ltd. v. City of S. Houston*, 282 S.W.3d 564, 570 (Tex. App.—Houston [14th Dist.] 2009, pet. denied). If the pleadings affirmatively negate the existence of jurisdiction, however, the trial court may grant a plea to the jurisdiction without allowing the

plaintiff an opportunity to amend. *Miranda*, 133 S.W.3d at 227; *Brown*, 80 S.W.3d at 555.

## II.    Analysis

Rain for Rent claims that Anahuac waived its immunity from liability under their agreement to provide filtration equipment and services. When a governmental entity contracts, it is liable on contracts made for its benefit as if it were a private person. *Fed. Sign v. Tex. S. Univ.*, 951 S.W.2d 401, 405–06 (Tex. 1997). To avail itself of a waiver of governmental immunity, Rain for Rent must allege sufficient facts to show that it entered into a written contract with Anahuac stating the essential terms of the agreement for providing goods or services to the City that was properly executed on behalf of the City. *See* TEX. LOC. GOV'T CODE ANN. §§ 271.151(2)(A), 271.152 (West 2005); *City of Houston v. Clear Channel Outdoor*, 233 S.W.3d 441, 446 (Tex. App.—Houston [14th Dist.] 2007, no pet.) The parties agree that section 271.152 applies to Anahuac's immunity defense.

The salient issue here is whether the City's passage of a motion to "go[] with" Rain for Rent in its August 18 meeting satisfies Rain for Rent's burden to show that it entered into a written contract with Anahuac stating the essential terms of the agreement on which Rain for Rent has sued. On that date, the initial application for a rental agreement was before the City Council. That document

sets forth the terms and conditions of the equipment rental, but it does not contain any pricing provisions.

The rental/sale estimate document, which, by its own terms, was prepared on September 8 and was signed on behalf of the City on September 13, expressly provides that it, the rental agreement, and an invoice constitute the complete and final agreement between Rain for Rent and its customer. The record does not contain an invoice, but the City's purchase order shows that the parties treated the rental/sale estimate as an invoice.

Rain for Rent's own documents affirmatively show that a portion of the written contract was not yet prepared when the Anahuac City Council approved going forward with Rain for Rent's proposal. That missing portion—the rental/sale estimate—contained the pricing terms for installation of the equipment as well as for its operation. The amounts set forth in that document do not correspond to the per-thousand-gallon figures that the Rain for Rent representative mentioned at the City Council meeting, and the credit application and proposal before the City Council contained no specific rental or other pricing terms. Nothing in the record supports a reasonable inference that a written proposal containing the pricing terms was before the City Council. *See S. Disposal, Inc. v. City of Blossom*, 165 S.W.3d 887, 894 (Tex. App.—Texarkana 2005, no pet.) (summary-judgment evidence raised fact question concerning whether city council

8

approved contract where proposed contract "may have been part of SDI's 'proposal' approved by city council as reflected in the minutes"). Based on this evidence, we are left to conclude that the Anahuac City Council did not pass on the ultimate pricing provision—an essential term of the written agreement. *See City of Houston v. Williams*, 353 S.W.3d 128, 134 (Tex. 2011) (explaining that, for immunity to be waived under section 271.152, "the entity must in fact have entered into a contract"); *see also Fort Worth Indep. Sch. Dist v. Fort Worth*, 22 S.W.3d 831, 847 (Tex. 2000) (applying rule that agreement to make future contract is unenforceable if any material term is left open to future negotiation to hold that lack of essential term specifying amount or percentage of funds that school district would receive rendered agreement unenforceable).

Rain for Rent relies on our sister court's decision in *Clear Channel Outdoor* in contending that the city administrator's signature on the rental/sale estimate shows that the agreement was properly executed on behalf of the City, and thus the statutory requirements for a waiver of immunity have been met. There, the City of Houston Department of Public Works and Engineering offered to purchase Clear Channel's billboard, located on property destined for a street reconstruction project. 233 S.W.3d at 443. The Department made the purchase offer "subject to City Council approval" and contingent on successful negotiation with the property owners. *Id.* The Department accompanied its offer to Clear Channel with a

proposed contract signed by an employee of the engineering firm retained by the city for the construction project. *Id.*

A few months later, the Houston city council considered a motion recommending that the city be authorized to condemn the property, including the billboard. *Id.* The motion described the billboard and specified the price offered to its owner. *Id.* It passed unanimously. *Id.* at 444. Afterward, however, the city claimed that the billboard's placement "was not legally permissible," and, as a result, that it was not obligated to compensate Clear Channel for removing the sign. *Id.*

In affirming the trial court's denial of the city's plea to the jurisdiction, our sister court concluded that contract was properly executed on behalf of the city. *Id.* at 447. Pursuant to municipal ordinance, the passed motion became effective five days after passage, with or without the mayor's signature. *Id.* at 446. The court observed that the motion presented to the city council recited the contract's essential terms, including the valuation for the billboard, which the Department's senior staff appraiser had reviewed and recommended for approval. *Id.* at 447. The terms of the offer conditionally accepted in the purchase agreement were identical to those set forth in the motion passed by the city council. *Id.*

In contrast, here, the Anahuac City Council never passed on the price term contained in the rental/sale estimate, either before or after the city administrator

10

signed it. As Rain for Rent points out, the city administrator may sign on behalf of the City only those contracts authorized by its City Council. A city's governing body may not delegate the right to make decisions affecting the transaction of city business. *City of San Benito v. Rio Grande Valley Gas Co.*, 109 S.W.3d 750, 757 (Tex. 2003); *Tara Partners, Ltd. v. City of S. Houston*, 282 S.W.3d 564, 579 (Tex. App.—Houston [14th Dist.] 2009, pet. denied). In the absence of a vote on the essential pricing terms of the proposed contract, the city administrator lacked the authority to sign it on behalf of the City.

Despite Rain for Rent's urging, the City's later actions in accepting Rain for Rent's services and providing some compensation for them or the City Council's later placement of an agreement in an agenda for one of its meetings cannot provide grounds for contending that the City waived its immunity. *See Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 414 (Tex. 2011) (reaffirming holding in *Texas Natural Resources Conservation Commission v. IT-Davy*, 74 S.W.3d 849, 857 (Tex. 2002), that it would not recognize a common-law waiver-by-conduct exception in breach-of-contract suit against governmental entity).

Finally, Rain for Rent contends that the trial court erred in dismissing the case with prejudice, in that the trial court's order did not allow Rain for Rent an opportunity to amend its pleadings to cure the jurisdictional defect. According to its terms, Rain for Rent's written contract comprises two documents, the second of

which was not in existence when the Anahuac City Council approved Rain for Rent's proposal. The second document contained the essential pricing terms. The evidence thus affirmatively shows that Rain for Rent and the City of Anahuac did not enter into a written contract that would support a waiver of Anahuac's immunity under section 252.152 of the Local Government Code. This evidence, which is undisputed, demonstrates an incurable defect in jurisdiction. We therefore hold that the trial court properly granted Anahuac's plea to the jurisdiction.

## Conclusion

We affirm the judgment of the trial court.


Jane Bland
Justice

Panel consists of Chief Justice Radack and Justices Bland and Huddle.